### SCHIRM v. DENE STEAM SHIPPING CO., Limited

(District Court, E. D. New York. June 24, 1914.)

1. SEAMEN ☞29—INJURY IN SERVICE—LIABILITY OF VESSEL—UNSAFE EQUIPMENT.

The failure to equip with handrails a stationary iron ladder in the engine room of a steamship, which was 8 feet long and nearly perpendicular, *held* not to constitute a want of reasonable care in the equipment of the vessel, which rendered the owners liable for injury to a seaman, who, in descending the ladder, slipped and fell astride one of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rungs; it being at least doubtful whether, owing to the perpendicular position of the ladder, handrails would have added to its safety.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ☞29.]

2. SEAMEN ☞29—INJURY IN SERVICE—LIABILITY OF VESSEL—UNSAFE EQUIPMENT.

Evidence that similar ladders on that and other ships were equipped with handrails, while relevant, does not establish the standard of what constitutes reasonable care; that being a question of substantive law, irrespective of actual practice.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ☞29.]

In Admiralty. Suit by Louis Schirm against the Dene Steam Shipping Company, Limited, owner of the steamship Ferndene. Decree for respondent.

Samuel Evans Maires, of Brooklyn, N. Y., for libelant.

Convers & Kirlin, John M. Woolsey, and M. W. Maclay, Jr., all of New York City, for respondent.

VEEDER, District Judge. The libelant claims damages from the respondent for injuries sustained in falling from a ladder in the engine room of the British steamer Ferndene. The libelant shipped as a donkeyman on the steamer March 23, 1913, the day on which she sailed from England. He was a man of nearly 40 years' experience at sea, during 23 years of which he had served as donkeyman. It was part of his duty as donkeyman to fill and trim the lamps in the engine room. On the Ferndene one of the lamps hung on the water column of the starboard boiler for the purpose of shedding light on the water glass. The engine room was separated from the boiler room by a 'thwartship bulkhead, through which the water column projected. The lamp in question was a little over 2 feet above a 'thwartship beam which ran across the bulkhead; the top of the beam being 8 feet above the engine room floor. The lamp was reached by an iron ladder, the top of which was bolted into the flange of the beam, the bottom resting upon the engine room floor. The ladder is described by all the witnesses as being almost perpendicular. The libelant and other witnesses stated that the bottom was set back a foot or more. The second engineer of the steamer, Tron, who prepared a measured sketch, gives the rake of the ladder as 2 feet 9 inches; but he does not seem to be sure that his measurements are accurate. The rake of the ladder must therefore be taken to have been between 1 foot and 2 feet 9 inches. The ladder was 16 inches wide, and had nine rungs spaced about 11 inches apart. Each rung consisted of two rods, forming a step about 1¾ inches wide.

The libelant trimmed and filled this lamp in the morning and evening each day. On the afternoon of December 10, 1913, in the performance of this duty, he mounted this ladder, on the starboard side of the engine room, with a hand lamp, a pair of lamp shears, and a piece of waste in one hand, and in the other hand a tin of cera wax. He trimmed the lamp in place as he stood on the ladder, and then attempted to descend the ladder, carrying in both hands the articles

which he had taken up. When about half way down the ladder his right foot or overalls caught in a nut or socket on the ladder, his right foot slipped, and he fell astride one of the rungs, in consequence of which he sustained a rupture. No complaint is made of the nut or socket upon which he stumbled. He bases his claim of fault solely upon the fact that the ladder was not provided with a handrail.

The libelant doubtless has, or had, a claim to compensation under the British Workmen's Compensation Act of 1906 (6 Edward VII, c. 58). By section 1, subd. 2b, of that act, the libelant has no option to take proceedings independently of the act, unless "the injury was caused by the personal negligence or willful act of the employer or of some person for whose act or default the employer is responsible." The British Merchant Shipping Act of 1894 requires that the owner of a ship, and the master, and every agent charged with the sending of the ship to sea, shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time the voyage commences, and to keep her in a seaworthy condition for the voyage during the voyage. St. 58 & 59 Vict. c. 60, § 458, subd. 1. The issue to be decided is, therefore, whether the absence of a handrail on the ladder in question constituted personal neglect or willful default on the part of the respondent to use reasonable means to insure the seaworthiness of the ship.

[1] A seaworthy ship has been defined by Baron Parke as being one "in a fit state as to repairs, equipment and crew, and in all other respects, to encounter the ordinary perils of the sea." Dixon v. Sadler, 5 M. & W. 405. As here involved, it is the equivalent of the familiar common-law obligation of an employer to furnish his employé with suitable appliances in a safe place to work. Like that obligation, it is expressed in terms of reasonable care, the care that a reasonably prudent person would take under the circumstances. Here was a ladder only a little over 8 feet in height. As set it was almost perpendicular. A person ascending or descending such a ladder necessarily leans toward it. In this position the sides and rungs of the ladder are in close proximity to his hands; it must be assumed that he grasps one or the other, or at least leans upon them, in using the ladder. They afford at all times ready and efficient means of security. If a ladder is set on such a substantial incline that, in order to maintain his equilibrium, the user is compelled to hold himself away from the ladder, then, of course, he must have a handrail, or something else extending above the ladder, to hold on. With a ladder as nearly perpendicular as this one was, I am unable to understand how a handrail would have added to the libelant's security in using it. It is to be observed, in this connection, that the libelant was injured, not by falling off the ladder, but by falling through it and straddling one of the rungs. It does not appear to me that he would have been any more likely to break such a fall by grabbing a handrail, had there been one.

[2] The libelant relies, however, upon the fact that other ladders in the ship's engine room were equipped with handrails, and upon his testimony that handrails were used on ladders in other ships. It appears that on the port side of this engine room there was a similar ladder for similar use, and on this ladder there was a handrail. The

evidence on behalf of the respondent indicates that the alleyway alongside the ladder on the port side was less restricted than on the starboard side. There were also two longer ladders leading from the deck to the engine room, and another shorter ladder leading to the engine, all of which were provided with handrails. But the ladders leading from the deck were some 15 feet long, and the short ladder was close to the engine machinery. It does not appear just what the rake of these ladders was, but they were described as being similar to the ladder from which the libelant fell. It was also shown that there were sockets for a handrail on the ladder in question. But no handrail had been attached to it on this voyage, and there was none aboard.

This proof of use of handrails on ladders on this ship and on other ships is doubtless relevant to the issue. Such use is relevant as evidence, but it does not establish the standard of conduct. The standard of conduct is fixed by the substantive law, independently of actual practice. What is usually done may be evidence of what ought to be done; but what ought to be done is fixed by the standard of reasonable care, whether it is usually complied with or not, and notwithstanding that other persons may make use of additional precautions. Upon all the evidence, I find that there was no breach of the respondent's duty to use reasonable care in the premises.

This conclusion renders a discussion of the issue of contributory negligence unnecessary. It is plain, however, that the libelant was negligent in using the ladder with both hands full, even if he was not also negligent in trimming and filling the lamp in place.

Other issues raised by the pleadings were not argued and do not require consideration.

The libel is dismissed.